**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

A.A., *by and through his Parents and next friend*,

    *Plaintiff*,

  v.

MONTGOMERY COUNTY BOARD OF EDUCATION, *et al.*,

    *Defendants*

Case No. 24-cv-1675-ABA

**MEMORANDUM OPINION**

Plaintiff A.A. (through his parents) filed a complaint with the Maryland Office of Administrative Hearings (OAH) contending that Defendant Montgomery County Public Schools (MCPS) failed to provide him a free appropriate public education (FAPE) during the 2021–2022 and 2022–2023 school years in violation of the Individuals with Disabilities Education Act (IDEA). The Administrative Law Judge (ALJ) concluded that A.A. was denied a FAPE for several months in the 2022–2023 school year when he did not receive speech and language services required by his IEP, but that A.A. had otherwise been provided a FAPE during the challenged school years.

A.A. has filed a case in this Court seeking judicial review of the OAH decision, arguing that this Court should conclude that Defendants failed to provide him with a FAPE for the two challenged school years because his IEPs included goals and objectives that were repeated from plan to plan and because his school delayed a behavioral assessment by several months. A.A. seeks as a remedy compensatory education in the form of a non-public placement. For the reasons that follow, the Court will deny

Plaintiff's motion for summary judgment and grant Defendants' motion for summary judgment.

## I.    BACKGROUND

### A.    Facts

A.A. has autism and has been receiving special education services since preschool. MCPS Exhibits at 1–2.[1] During the challenged school years, A.A. was a kindergartener (2021–2022) and first grader (2022–2023) in the Autism Program at S. Christa McCauliffe Elementary School (SCMES), where he spent most of the school day outside general education in a class with a low teacher-to student ratio. *Id.* at 291, 347; Student Exhibits at 96. He spent lunch and recess with general education students. MCPS Exhibits at 348.

#### i.    The March 2021 IEP and amendments

In March 2021, MCPS held an annual IEP meeting to review and revise A.A.'s IEP that would apply to the remainder of the 2020–2021 school year and the beginning of the 2021–2022 school year ("the March 2021 IEP"). Student Exhibits at 53. The March 2021 IEP set seven early learning skills goals for the upcoming year in the areas of physical well-being and motor development, language and literacy, social foundations, and mathematics. *Id.* at 83–92.

In September 2021, A.A. began kindergarten at SCMES. Hearing Transcript Vol. 1 at 46. From September 2021 to January 2022, A.A. was making progress on his physical well-being and motor development goals, but according to progress reports

---

[1] Citations to MCPS Exhibits and Student Exhibits refer to the binders of hearing exhibits submitted for the OAH hearing by MCPS and A.A. respectively; pagination refers to the Bates numbers used in each binder.

incorporated into the March 2021 IEP, his progress began to slow in the other early learning skills areas starting around November 2021. Student Exhibits at 83–86, 88–92. To address concerns about his progress, A.A.'s IEP team held an IEP meeting in January 2022. MCPS Exhibits at 1. Based on that meeting, A.A.'s March 2021 IEP was amended to update his present levels and his goals and objectives. *Id.* at 5–19, 31–40. Because the November and January progress reports noted that A.A.'s behaviors interfered with his progress on IEP goals, the IEP team also proposed that MCPS conduct a Functional Behavior Assessment (FBA).[2] MCPS Exhibits at 48; *see also, e.g.*, Student Exhibits at 91 (January 2022 progress report noting, "[A.A.] frequently demonstrates behaviors including eloping, climbing, and throwing items . . . [that] frequently interfere with [his] ability to demonstrate these [IEP] objectives."). A.A.'s parents consented to the FBA in February 2022. OAH Hearing Transcript, Vol. 1 at 107.

### ii.    The March 2022 IEP and amendments

In March 2022, MCPS held the annual IEP meeting to review and consider revisions to A.A.'s IEP for the remainder of the 2021–2022 school year and into the 2022–2023 school year. MCPS Hearing Exhibits at 93. The updated IEP ("March 2022 IEP") noted A.A.'s abilities across multiple areas, including areas of progress (*e.g.*, matching numbers 1 through 10, using appropriate hand gestures to demonstrate wants and needs), and areas where improvement was still needed (receptively identifying

---

[2] A Functional Behavior Assessment is "the systematic process of gathering information to guide the development of an effective and efficient behavior intervention plan for the problem behavior." Md. Code Regs. 13A.08.04.02(B)(7)(a).

pictures of common objects, using letter sounds to sound out words). *Id.* at 53, 59.[3] The March 2022 IEP added new academic goals in the areas of reading comprehension, reading vocabulary, written language content, and math calculation, and one non-academic behavioral goal. *Id.* at 73–79. The March 2022 IEP also kept some goals from the March 2021 IEP (*i.e.*, two physical well-being and motor development goals and two language and literacy goals) with minimal changes. *Id.* at 79–84. In the March 2022 IEP, the IEP team determined A.A. should continue to participate in the Autism Program at SCMES where he was on a high school diploma track. MCPS Exhibits at 52, 89. The IEP team also recommended that A.A. participate in Extended School Year (ESY) (*i.e.*, special education and related services provided beyond the normal school year at no cost to the family). *Id.* at 71–72. A.A.'s parents agreed to the March 2022 IEP, but A.A. did not attend ESY that summer. *Id.* at 136. Although the FBA should have been completed by sometime in May 2022,[4] Defendants concede that "MCPS did not

---

[3] One section of the Maryland State Department of Education IEP form is "Present Level of Academic Achievement and Functional Performance," wherein IEP team members report on a student's recent performance based on, among other things, individualized assessments, classroom-based observations, and parent information. *See, e.g.*, MSDE Exhibits at 53. This information is referred to in many exhibits, and herein, as "present levels."

[4] The record contains conflicting evidence about when the FBA and BIP were actually completed. A written notice from the school states that "the FBA and BIP . . . were conducted at the end of [the 2021–2022] school year," MCPS Exhibits at 146. *See also* Hearing Testimony, Vol. 3 at 342 (testimony from MCPS school psychologist that a program specialist "actually did have [the FBA] completed on time," but the program specialist "forgot to have the meeting"). But other evidence indicated that the FBA and the BIP were developed with data from the first few weeks of school. Hearing Transcript, Vol. 3 at 446; see also Student Exhibits at 161 (copy of FBA dated September 9, 2022). The precise timing of the FBA's completion is not critical to any issue before this Court, particularly considering MCPS's admission that the FBA was completed late.

timely complete and implement the FBA." ECF No. 32-1 at 32.[5]

A.A. began the next school year as a first grader in fall 2022. MCPS held a meeting to review the FBA and the Behavior Intervention Plan (BIP) on September 16, 2022. MCPS Exhibits at 146.[6] The FBA indicated that A.A. was regularly engaging in disruptive behaviors that interfered with his learning, including climbing, physical disruption (*e.g.*, throwing materials), and moving out of an assigned area. Student Exhibits at 161–65. The BIP included recommended strategies, such as pre-scheduled breaks, prompt hierarchy, and Functional Communication Training, to reduce A.A.'s "problem behaviors." *Id.* at 152–53. At the September 16 meeting, the IEP team also revised the March 2022 IEP in light of the assessment and BIP recommendations. MCPS Exhibits at 146. The IEP was amended to update A.A.'s present levels as of September, noting that he had made progress in several areas (*e.g.*, consistently demonstrating using both hands while completing tasks) and had challenges in others (*e.g.*, tracing his name and matching words to their corresponding picture without supports). *Id.* at 100–09. The amended IEP added four new behavioral goals that were focused on the behaviors identified in the FBA (*i.e.*, physical disruption, climbing, and out of area behaviors). MCPS Exhibits at 126–30. At the September meeting, the IEP

---

[5] For citations to ECF, page numbers refer to the number appearing in the CM/ECF header for this and other filings referenced herein, which may not align with a document's original page numbering.

[6] A Behavior Intervention Plan is a "proactive plan designed to address problem behavior exhibited by a student in the educational setting through the use of positive behavioral interventions, strategies, and supports." Md. Code Regs. 13A.08.04.02(B)(1)(a).

team also determined that A.A. would pursue a certificate of program completion rather than a high school diploma. *Id.* at 99.

The IEP team held two more meetings in October and November 2022 to address A.A.'s parents' concerns about the repetition of goals across IEPs. *Id.* at 207. At the October 2022 meeting, the IEP team also discussed the issue of speech and language therapy. *Id.* Between September and December 2022, SCMES did not have a speech and language pathologist, so A.A. did not receive the 40 minutes of weekly speech/language therapy included in his IEP. *Id.* at 199, 207. A.A. began receiving services with an MCPS speech and language pathologist again in December 2022. Hearing Transcript, Vol. 4 at 509. The school offered "makeup" sessions throughout the spring, in addition to his regular weekly sessions. *Id.* at 500–01.

At the November 2022 meeting, the IEP team amended the March 2022 IEP again. MCPS Exhibits at 147, 207–08. As amended, the March 2022 IEP now included six hours of daily one-to-one critical staffing to assist with implementation of the interventions recommended in the BIP. *Id.* at 177. The school team concluded that the Autism Program remained the proper placement for A.A., although his parents did not agree with this placement. *Id.* at 208. At the meeting, several IEP team members discussed A.A.'s progress, including "a decrease in out of area and climbing behaviors" and "[occupational therapy] goals." *Id.* at 207. A.A.'s family, represented by an attorney, discussed A.A.'s lack of progress and the carrying over of goals from plan to plan. *Id.* at 208.

In late February and early March 2023, MPCS held A.A.'s annual IEP meeting. *Id.* at 210, 262. At the meeting, the team updated A.A.'s present levels, noting "steady progress" in reading comprehension, mathematics, and written language, and progress

6

in several other areas. *Id.* at 216, 218. The new version of the IEP (the "March 2023 IEP") set several new goals, including in the areas of behavior, receptive language, expressive language, fine motor coordination, reading comprehension, and others. *Id.* at 240–53. The March 2023 IEP also made two of A.A.'s social emotional/behavioral goals easier to achieve and one of A.A.'s social emotional/behavioral goals harder to achieve as outlined in Table 1 below:

Table 1.

| March 2022 IEP (as amended in September 2022) | March 2023 IEP |
|---|---|
| Given visual supports, individualized reinforcement schedule, opportunities to practice, and strategies outlined in the [BIP], [A.A.] will decrease the frequency of out of area behaviors [to] *no more than 12 times per day* for ten consecutive days by March 7, 2023. | By February 2024, when given visual supports, individualized reinforcement schedule, opportunities to practice, and strategies outlined in the [BIP], [A.A.] will decrease the frequency of out of area behaviors [to] *no more than 5 times per day* for ten consecutive days. |
| Given visual supports, individualized reinforcement schedule, opportunities to practice, and strategies outlined in the [BIP], [A.A.] will decrease the frequency of climbing behaviors [to] *no more than 4 times per day* for ten consecutive days by March 7, 2023. | By February 2024, when given visual supports, individualized reinforcement schedule, opportunities to practice, and strategies outlined in the [BIP], [A.A.] will decrease the frequency of climbing behaviors [to] *no more than 5 times per day* for ten consecutive days. |
| Given visual supports, individualized reinforcement schedule, opportunities to practice, and strategies outlined in the [BIP], [A.A.] will decrease the frequency of physical disruption behaviors [to] *no more than zero occurrences daily* for ten consecutive days by March 7, 2023. | By February 2024, when given visual supports, individualized reinforcement schedule, opportunities to practice, and strategies outlined in the [BIP], Abdallah will decrease the frequency of physical disruption behaviors to *no more than one occurrence per day* for ten consecutive days. |

MCPS Exhibits at 126–30, 248–51 (emphases added). Because the duration of A.A.'s climbing behaviors had significantly decreased, a goal related to climbing incident

duration was not carried over into the March 2023 IEP. *Id.* at 262; *see also id.* at 222 (noting that the average duration of a climbing incident had gone from 4 minutes, 37 seconds per day to 24.5 seconds per day).

In the March 2023 IEP, the IEP team maintained A.A.'s placement in the Autism Program and determined that he was again eligible for ESY services. *Id.* at 238–39, 258. The team also proposed updated assessments and performed those assessments (a bilingual speech-language re-assessment, educational assessment, and psychological re-evaluation) in March and April 2023. *Id.* at 264, 276, 284, 293.

In April 2023, MCPS held another IEP meeting to review A.A.'s placement in the Autism Program in light of the completed evaluations. The IEP team determined that A.A. remained eligible for the autism program (and believed the autism program was an appropriate fit for his needs) and the March 2023 IEP was amended to update A.A.'s present levels. *Id.* at 301–03, 351–52. A.A. did not participate in ESY services in summer 2023. Hearing Transcript, Vol. 1 at 82.

### B.    Procedural History

On August 25, 2023, A.A. through his parents filed a Due Process Complaint with the Maryland OAH. ALJ Decision at 1. Administrative Law Judge Edward J. Kelley presided over an eight-day hearing in January 2024. *Id.* at 3. During the hearing, A.A. and MCPS each presented five witnesses. *Id.* at 4–5. The ALJ also considered 18 exhibits from A.A. and 20 exhibits from MCPS that were offered and admitted. ALJ Decision Appendix at 1–2.

ALJ Kelley considered the following three issues:

1.  Was the Student denied a Free Appropriate Public Education (FAPE) for the 2021-2022 and 2022-2023

school years based on the MCPS's failure to timely
complete and implement a Functional Behavior
Assessment (FBA) and a Behavior Intervention Plan
(BIP)?

2. Was the Student denied a FAPE for the 2021-2022 and
2022-2023 school years based on the MCPS's failure to
develop and implement Individual Education Programs
(IEP) that adequately addressed the student's educational
goals and objectives?

3. If the MCPS denied the Student a FAPE for the 2021-
2022 and/or the 2022-2023 school years, what is the
proper remedy?

ALJ Decision at 4.

In February 2024, ALJ Kelley issued a 47-page decision and concluded that the

IEPs developed for the challenged school years "were reasonably calculated based on

[A.A.'s] needs and provided a FAPE." *Id.* at 32. He noted A.A.'s parents' concerns that

goals were repeated from IEP to IEP and that they did not receive the data they wanted

to track A.A.'s progress (or lack of progress). *Id.* at 32, 38. But the ALJ noted that three

of A.A.'s four expert witnesses at the hearing agreed the IEPs were reasonably calculated

to enable him to make progress. *Id.* at 39. The ALJ noted that the fourth expert, who

testified that the IEPs were not reasonably calculated to meet A.A.'s unique needs, had

no direct contact with A.A. in his learning environment. *Id.* at 39–40. The ALJ noted

that, although "some . . . annual goals and objectives were repeated or made slightly

easier" from one IEP to the next, most of A.A.'s goals and objectives were new and

supported by "observational and analytical data" within the IEPs. *Id.* at 40–41. The

decision also emphasized that IEPs are "forward-looking" and that whether an IEP

provides a FAPE is "based on the information available to the public school *at the time*

the IEP is formulated." *Id.* at 41. For these reasons, ALJ Kelley concluded that A.A.'s IEPs covering the 2021–2022 and 2022–2023 school years were "reasonably calculated to enable [A.A.] to make progress in light of his unique circumstances" and therefore provided a FAPE. *Id.* at 47.

The ALJ also determined that, although MCPS's failure to timely complete the FBA was "troubling" and was a "serious procedural violation," it did not result in a substantive denial of a FAPE. *Id.* at 34. The ALJ noted that when there is a procedural defect, the next step is "to assess whether it resulted in the loss of an education opportunity," or whether it was merely a "technical contravention." *Id.* at 33 (quoting *M.M. v. Sch. District of Greenville Cnty.*, 303 F.3d 523, 533 (4th Cir. 2002)). The ALJ determined that the delay in administering the FBA did not result in a substantive FAPE denial based on both the substance of the FBA (once completed) and the timing of the delay. As to the content of the FBA, the ALJ noted that the behaviors identified in the FBA were all behaviors that had been identified in previous IEPs, and A.A.'s teachers had already begun using interventions to address them. *Id.* at 34–35. As to timing, the ALJ stated that although the FBA and BIP should have been completed in "the very end of the 2021-2022 school year" (late May 2022), the assessments were ultimately completed at "the very beginning of the 2022-2023 school year" (September 6, 2022). Because A.A. did not attend the summer ESY program, there was no lost benefit over the summer. *Id.* at 36. Given the limited time between when the FBA should have been completed and when it ultimately was completed—along with the absence of any evidence showing that completing the assessments earlier would have affected A.A.'s educational progress—the ALJ found that the delay in administering the FBA "did not result in a substantive denial of FAPE." *Id.* at 36.

10

Finally, ALJ Kelley concluded that the failure to provide A.A. with the speech and language services required by his IEP for part of the 2022–2023 school year constituted a denial of a FAPE. *Id.* at 47. He ordered that A.A. was entitled to compensatory education "in the form of speech and language services equal to the amount of services lost" (*i.e.*, 360 minutes), but denied the request for compensatory education in the form of a private placement. *Id.* at 33, 47.

A few months after the ALJ's decision, in June 2024, A.A. by and through his parents brought this case against MCPS and the Montgomery County Board of Education in this Court. ECF No. 1. Defendants filed an answer. ECF No. 17. In January 2025, Plaintiff filed a motion for summary judgment, ECF No. 24, and Defendants opposed the motion and filed their own cross-motion for summary judgment, ECF No. 32. Plaintiff opposed the cross-motion and replied in support of his motion, ECF No. 33, and Defendants filed a reply in support of their cross-motion, ECF No. 36.

## II.    STANDARD OF REVIEW

The IDEA governs a district court's review of IDEA claims. *See G.M. by E.P. v. Barnes*, 114 F.4th 323, 330 (4th Cir. 2024) (citing 20 U.S.C. § 1415(i)(2)(A)). An action under the IDEA filed in federal district court is "an original civil action, not an appeal from a state administrative agency." *Johnson v. Charlotte-Mecklenburg Schs. Bd. of Educ.*, 20 F.4th 835, 844 (4th Cir. 2021)). The district court conducts a "modified de novo review," in which it performs an independent review while "giving due weight to the underlying administrative proceedings." *R.F. v. Cecil Cnty. Pub. Schs.*, 919 F.3d 237, 244 (4th Cir. 2019) (internal quotation omitted). The burden of proof is on the party seeking relief to establish entitlement to relief by a preponderance of the evidence. *G.M.*, 114 F.4th at 334; 20 U.S.C. § 1415(i)(2)(c). "Any review of an IEP must appreciate that

the question is whether the IEP is *reasonable*, not whether the court regards it as ideal." *Endrew F. v. Douglas Cnty. Sch. Dist.*, 580 U.S. 386, 399 (2017). The Court "must be careful to avoid imposing [its] view of preferable educational methods" and must not "substitute [its] own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206–07 (1982).

## III. DISCUSSION

Plaintiff's primary argument is that MCPS did not provide A.A. with a FAPE because his IEPs were not "reasonably calculated" to enable him to make appropriate progress given A.A.'s circumstances. Plaintiff also argues the delay in administering and reviewing the Functional Behavior Assessment constituted a denial of a FAPE because it led to a delay in A.A.'s improvement in his problem behaviors. The Court concludes that Plaintiff has not shown by a preponderance of the evidence that either of these circumstances constitute a denial of a FAPE and, therefore, summary judgment in Defendants' favor is appropriate.[7]

### A. The content of A.A.'s IEPs did not deny his right to a FAPE.

Plaintiff contends that A.A. was denied a FAPE because his IEPs were not "reasonably calculated" to address his unique needs, pointing to two major issues. First, Plaintiff argues that the repetition of goals and objectives from year-to-year, and the changes to some goals to make them easier, establish that A.A. was not making progress over several years. ECF No. 24 at 18. Second, Plaintiff argues that MCPS's failure to

---

[7] Because the Court grants summary judgment in Defendants' favor, it need not address the issue of whether a non-public placement would be an appropriate remedy for any FAPE violation.

provide A.A.'s parents with data to show why the IEP goals were appropriate, and supports his argument that MCPS has failed to provide a "cogent and responsive reason" as to why the IEPs were appropriate at the time of development. *Id*. Without data, Plaintiff argues, there is no way to tell if progress, or regression, occurred. *Id*. at 19.

Defendants maintain that A.A.'s IEPs for the 2021–2022 and 2022–2023 school years afforded him a FAPE because A.A.'s teachers testified that the IEPs were appropriate and demonstrated that A.A. was making progress. ECF No. 32-1 at 34. They note that several new goals were added in the March 2022 and March 2023 IEPs, while only a few goals were repeated or made easier. *Id*. at 34–35. Defendants also note that the IEPs "included daily instructional supports" to address A.A.'s needs, such as repetition of directions, use of graphic symbols, sign language, and communication boards. *Id*. at 35–36. Defendants contend that a student's failure to meet IEP goals "does not in and of itself suggest a denial of FAPE." *Id*. at 34.[8]

Under the IDEA, a school must offer each eligible student an IEP "reasonably calculated to enable [the student] to make progress appropriate in light of the[ir] circumstances." *Endrew F.*, 580 U.S. at 399. The standard does not require a school to craft an "ideal" IEP, but the plan should be "appropriately ambitious" given the student's unique circumstances." *Id*. Creation of an IEP is a "fact-intensive exercise" that requires both school officials' expertise and the input of a student's parents or guardians. *Id*. Because "[j]udicial review of IEPs under the IDEA is meant to be largely

---

[8] Defendants also argue that some regression A.A. experienced was likely based on him not attending ESY, which was recommended in his IEPs. ECF No. 32-1 at 37; *see also* MCPS Exhibits at 72 ("The IEP team feels [A.A.'s progress] during the regular school year will be significantly jeopardized without ESY services.").

prospective," a key question is whether the IEP was reasonably calculated to enable the child to receive educational benefits "at the time [it] was created." *Schaffer ex rel. Schaffer v. Weast*, 554 F.3d 470, 477 (4th Cir. 2009). The Supreme Court has cautioned that, in determining whether an IEP is adequate, courts should not "substitute their own notions of sound educational policy for those of the school authorities which they review." *Id.* at 404.

The repetition of a few goals from one IEP to the next is not sufficient to establish that the IEPs were inadequate or constituted a deprivation of a FAPE. *See M.S. v. Fairfax Cnty. Sch. Bd.*, 553 F.3d 315, 327 (4th Cir. 2009) (stating that "progress, or lack thereof" is "important, [but] not dispositive" as to whether an IEP was reasonably calculated to confer an educational benefit). A failure to meet certain goals or objectives does not necessarily mean the IEPs themselves were "inappropriate at the time they were formulated." ECF No. 24 at 18. Because IEPs are designed to be "appropriately ambitious" and give each student "the chance to meet challenging objectives," *Endrew F.*, 580 U.S. at 402, it is certainly possible that a student will not meet all the goals set for that student. To decide otherwise would encourage schools to be overly cautious and include only goals that they are confident the student will meet, which would be inconsistent with the broad purpose of the IDEA. *Id.*

Although some of A.A.'s goals were repeated from IEP to IEP, the context of the repetition and the content of the full IEPs demonstrate that the plans were "reasonably calculated" for A.A. to make appropriate progress. For example, A.A.'s March 2021 IEP had seven goals and his March 2022 IEP had nine goals; four goals were repeated between the two IEPs. Student Exhibits at 83–92; MCPS Exhibits at 73–84. One of those goals—A.A.'s fine motor skills goal—was repeated, but the goal was expanded upon to be

14

more detailed and the objectives in support of that goal became more challenging in the

March 2022 IEP. *Compare, e.g.*, March 2021 IEP, Student Exhibits at 84 (setting an

objective to be completed with the support of "multisensory prompts and no more than

5 verbal prompts"), *with* March 22 IEP, MCPS Exhibits at 81 (setting that same

objective to be completed with the support of "no more than 4 verbal prompts"). For two

other repeated goals—two language and literacy goals—progress reports indicate that

A.A. began the 2021–2022 school year progressing in this area, but his progress slowed

in January 2022. Student Exhibits at 87, 89. An IEP meeting was then held in January

2022, where the IEP team updated A.A.'s language/literacy and occupational therapy

goals. MCPS Exhibits at 48. In light of this context, repeating these goals in the March

2022 IEP (*i.e.*, just two months after A.A.'s progress reports showed he was not making

sufficient progress), does not demonstrate that the IEPs were not "reasonably

calculated" to continue A.A.'s educational progress. In fact, A.A. then moved from "not

making sufficient progress" to "making sufficient progress" between April and June

2022, MCPS Exhibits at 82–83, suggesting that the goal was a reasonable one for the

March 2022 IEP "at the time [the] IEP was created." *Schaffer*, 554 F.3d at 477. The

fourth repeated goal—A.A.'s adaptive skills goal—and the associated objectives did not

change from March 2021 to March 2022. Student Exhibits at 83–84; MCPS Exhibits at

79–80. A.A.'s consistent progress on this goal as noted in the March 2021 IEP suggests

the goal's inclusion in the March 2022 IEP might not have been strictly necessary. *See*

Student Exhibits at 83–84 (noting in June, July, and November of 2021, and January of

2022 that A.A. was making "sufficient progress to meet goal"). But its repetition, in the

context of the March 2022 IEP's added and revised goals, does not suggest that this goal's repetition in the March 2022 IEP impaired A.A.'s receipt of a FAPE.

Of the three social emotional/behavioral goals that were changed from the March 2022 IEP (as amended in September 2022) to the March 2023 IEP, one goal (out-of-area behaviors) was made harder to achieve and two goals were made easier to achieve. *See* Table 1 above. But the March 2023 goals for *all three* social emotional/behavioral areas were designed to set a goal that would represent an improvement based on the most recent data. For example, as of November 2022, A.A. had been engaging in 5.7 climbing episodes per day with a range of zero to 28 episodes per day. And as of January 2023, A.A. had been engaging in climbing behaviors 7.4 times per day with a range of zero to 18 episodes per day. MCPS Exhibits at 161, 187. Given these figures, the March 2023 goal to decrease the frequency of these behaviors to "no more than 5 times per day for 10 consecutive days" represents a goal to both reduce the frequency of climbing behaviors and to show improvement that is consistent over time. MCPS Exhibits at 249.

The facts are similar for A.A.'s physical disruption goal. As of November 2022, A.A. had an average of 1.17 physical disruptions per day and went nine consecutive days with no more than two physical disruptions per day. As of January 2023, A.A. had an average of 1.5 physical disruptions per day and went seven consecutive days with no more than two physical disruptions per day, noting increased behaviors when working with less familiar staff or returning from long breaks. Given these figures, the March 2023 goal to decrease the frequency of A.A.'s physical disruptions to "no more than one occurrence per day for ten consecutive days" represents a goal to both reduce the frequency of his physical disruption behaviors and to show improvement that is consistent over time. MCPS Exhibits at 250.

The social emotional/behavioral goal that was made harder to achieve from the March 2023 IEP underlines that A.A.'s goals were being developed based on data available at the time. In the March 2022 IEP, the goal was for A.A. to decrease his out-of-area behaviors to "no more than 12 times per day for ten consecutive days." *Id.* at 185. A.A. met this goal. As of January 2023, A.A. had an average of 8 out-of-area episodes per day and, as of February 2023, he had an average of 7.8 out-of-area episodes per day. *Id.* at 186, 223. The March 2023 IEP then set a goal to reduce out-of-area behaviors to "no more than 5 times per day for ten consecutive days." *Id.* at 248. In short, when A.A.'s IEPs are compared in a vacuum, it does appear that some goals have been made easier over time. But when considering A.A.'s recent progress at the time of the March 2023 IEP's development, each goal is forward-looking. Although A.A.'s parents may wish that the goals were even more ambitious, a school is not required to design an "ideal" IEP to provide a FAPE. *Endrew F.*, 580 U.S. at 399. An IEP is only required to be "reasonable" and "appropriately ambitious" given the student's unique circumstances. *Id.* at 399, 402. The close connection between contemporaneous data about A.A.'s progress and the IEP goals persuades the Court that the IEPs were reasonable and individualized to A.A.'s educational needs.

In sum, the preponderance of the evidence shows that the IEPs covering the challenged school years were "reasonably calculated" for A.A. to make appropriate progress. The Court cannot conclude that there was a failure to provide a FAPE on this basis.

Plaintiff also argues that MCPS did not offer sufficient data to show that the IEP goals were appropriate and that without such data, Defendants cannot provide a "cogent and responsive explanation for their decision." ECF No. 24 at 18 (quoting *Endrew F.*,

580 U.S. at 404). Plaintiff seeks specific types of data, such as service logs, autism grids, and clicker reports. *Id.* at 8. Plaintiff contends that the only data MCPS put in the record is the IEPs themselves. *See id.* at 7 ("In our case, there are no standardized tests, formal assessments or other data that show if progress or regression occurred."). But, as noted above, the IEPs include information, including specific data points about A.A.'s problem behaviors, that directly connect to the goals included in the IEPs. Without addressing whether the failure to provide any particular type of data was a procedural error, the Court also does not find that there was a failure to provide a FAPE on the basis of inadequate data.

## B. The delayed completion of A.A.'s FBA and BIP did not constitute a denial of a FAPE.

Plaintiff also argues that A.A. was denied a FAPE because MCPS failed to "timely complete and implement a Functional Behavior Assessment and a Behavior Intervention Plan." ECF No. 24 at 24. Plaintiff notes that A.A.'s past IEPs had noted behaviors that interfered with learning and emphasized that one expert testified at the OAH hearing that "constant interfering behaviors" would make it difficult to progress on other IEP goals. *Id.* at 25 (citing OAH Hearing Transcript, Vol. 2 at 198). Plaintiff argues that A.A.'s improvement between September 2022 and February 2023 (*i.e.*, after the strategies in the BIP began to be implemented) show that his behaviors would have "improved much sooner and he would have been more available for learning" had the assessment been completed within 90 days. ECF No. 24 at 27.

Defendants maintain that the FBA/BIP delay did not result in a denial of FAPE because A.A.'s past and then-current IEPs "directly addressed [A.A.'s] interfering behaviors and contained services and strategies for dealing with them." ECF No. 32-1 at

32. Defendants also note that the FBA did not identify any new types of problem behaviors and emphasize that MCPS staff were already addressing the identified problem behaviors. *Id.* Finally, Defendants argue that Plaintiffs have no evidence that delayed completion of the FBA and BIP negatively affected the two challenged school years. *Id.* at 33.

The delay in administering the FBA and completing the BIP was a procedural error. *See* COMAR 13A.05.01.06 § E(6) (requiring assessment results to be used by the IEP team within 90 days). The ALJ recognized this, and Defendants appear to concede the error as well. *See* ALJ Decision at 34; ECF No. 32-1 at 32 ("MCPS did not timely complete and implement the FBA and the BIP"). The only remaining question is whether the procedural violation "resulted in the loss of an educational opportunity" for the student. *M.M.*, 303 F.3d at 533.

Plaintiff has not proven by a preponderance of the evidence that the delay in completing the FBA and BIP and amending A.A.'s IEP accordingly resulted in a denial of a FAPE. First, the three problem behaviors noted by the FBA were already included in A.A.'s previous IEPs, along with strategies for addressing them. The FBA, which was based in part on data from the end of the 2021–2022 school year, stated that A.A. engaged in (1) moving "out of area" an average of 18 times a day, (2) climbing an average of 8 times a day for an average of 12 minutes per incident, and (3) physical disruption (*e.g.*, throwing or "swiping" an object) an average of once per day. Student Exhibits at 163. *See also* September Hearing Transcript Vol. 3 at 346 (data from the end of the 2021-2022 school year and from the "first few weeks of school" was used to develop the FBA and BIP). Each of these behaviors had been noted in the March 2022 IEP. *See* MCPS Exhibits at 60 (observing climbing, eloping, and throwing classroom materials);

*see also, e.g.*, MCPS Exhibits at 75 (noting that "visual supports and repeated prompts to stay in his seat" assist A.A. in participating in "large and small group activities"), Hearing Testimony, Vol. 3 at 341–42 (school psychologist testimony that "we were kind of constantly working on [A.A.'s] behavior" and "working on behavior strategies with [A.A.] was "a constant thing that [2021-2022] school year").

"A failure to conduct an FBA will not always rise to the level of a denial of FAPE, but 'when an FBA is not conducted, the court must take particular care to ensure that the IEP adequately addresses the child's problem behaviors.'" *S.S. v. Bd. of Educ. of Harford Cnty.*, 498 F. Supp. 3d 761, 780 (D. Md. 2020) (quoting *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 190 (2d Cir. 2012)). It is true that timely completion of the FBA and the BIP might have led to the adoption of new or different supports and strategies to alleviate A.A.'s problem behaviors sometime before late September 2022. But in light of the fact that MCPS was aware of the problems that would later be identified by the FBA and was already using strategies to address them, Plaintiff has not shown by a preponderance of the evidence that the delay in completing the FBA and BIA constituted a failure to provide A.A. a FAPE.

The Court also notes, as ALJ Kelley did, that the difference in instructional time between when the assessments should have been completed and when they were actually completed was relatively minimal. ALJ Decision at 38. The precise last day of the 2021–2022 school year and the first day of the 2022–2023 school year are not clear from the record, but the number of instructional days affected was inherently limited because A.A. did not participate in ESY in summer 2022. MCPS Exhibits at 136. Given the short time period encompassed by the procedural error, and particularly because some supports and strategies to address the problem behaviors were already in place

during that interim time, the Court concludes that the delay did not result in a denial of a FAPE.

## IV.    CONCLUSION

For the reasons stated above, the Court will deny Plaintiff's motion for summary judgment and will grant Defendants' motion for summary judgment. A separate order follows.


Date:  September 12, 2025                    _____/s/_____

                                            Adam B. Abelson
                                            United States District Judge